IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| SINAN RAYYAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Civil Action No. 1:15-cv-01681 |
| ) | |
| ) | |
| VIRGINIA DEPARTMENT ) | |
| OF TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## Memorandum Opinion

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment.

Virginia Department of Transportation ("Defendant") hired Sinan Rayyan ("Plaintiff") as a senior project manager in its Fredericksburg District on January 10, 2012. Plaintiff, an Arab-American and Muslim, is a licensed professional engineer. In the Fredericksburg District, there were three licensed professional engineers: Plaintiff, Kevin Northridge, and Michelle Shropshire. Northridge and Shropshire are both Caucasian. Plaintiff reported to Northridge until Northridge resigned in December 2013. After Northridge resigned and until Plaintiff was fired, he reported directly to Shropshire, who had been Northridge's supervisor.

Defendant provided employees with regular performance reviews. An employee could be rated as a "contributor" or as "below contributor." In the first year of his employment with Defendant, Plaintiff was on a probationary status and received four performance reviews. He was marked as a "contributor" with areas for improvement. In March 2013, Northridge gave Plaintiff a Notice of Improvement Needed/Substandard Performance because Plaintiff struggled in project documentation, time management, and understanding VDOT processes.

In April, June, and August of 2013, Northridge provided Plaintiff with three more counseling memos advising Plaintiff that his performance was deficient. Plaintiff received the April memo for failing to prioritize an important project. He received the June memo for taking a document with Shropshire's signature, changing the text of the document, and then using the signature page without Shropshire's knowledge or consent. He received the August memo for failing to establish intermediate deadlines for another project. All of these memos warned Plaintiff to improve his performance or risk facing disciplinary action.

In October 2013, Plaintiff received an annual performance review that rated him as "below contributor." Along with noting the deficiencies mentioned earlier in 2013, Northridge's review stated that Plaintiff was failing to provide sufficient guidance to his subordinates, which resulted in several projects running

2

behind schedule. Northridge indicated that Shropshire edited all of these performance documents, but he agreed that Plaintiff was struggling to meet Defendant's performance expectations. When Plaintiff responded to the October 2013 review, he did not raise any issues of racial or religious discrimination.

On November 22, 2013, Plaintiff grieved his "below contributor" rating and stated that he thought he experienced "discrimination or retaliation by immediate supervisor." This was the first time he indicated any issue of discrimination or retaliation. Northridge was Plaintiff's direct supervisor at the time. Plaintiff's grievance did not mention Shropshire by name. Defendant's Civil Rights Division reviewed Plaintiff's claim and closed its review on December 12, 2013, because the claim lacked evidentiary support. Throughout his employment with Defendant, Plaintiff never asked for a religious accommodation or mentioned his race.

Plaintiff was placed on a 90-day performance improvement and re-evaluation plan. Northridge supervised Plaintiff until Northridge resigned on December 4, 2013. At the time, Northridge was under intense scrutiny for his own performance issues. After Northridge resigned, Shropshire supervised Plaintiff until he was terminated on January 28, 2014, because his re-evaluation plan rank was "below contributor." Plaintiff met with Shropshire and Barbara Booker, the Senior Human Resources Consultant for

the Fredericksburg District, for a due process panel on January 30, 2014. At the meeting, Plaintiff did not indicate that he thought his termination was motivated by racial or religious discrimination.

On December 22, 2015, Plaintiff filed the present action in federal court. He stated four counts: (1) racial discrimination and termination in violation of Section 1981 of the Civil Rights Act of 1866; (2) racial discrimination and termination in violation of Title VII of the Civil Rights Act of 1964; (3) retaliation and wrongful discharge in violation of Title VII of the Civil Rights Act of 1964; and (4) religious discrimination and termination in violation of Title VII of the Civil Rights Act of 1964.

Plaintiff asserts that Shropshire discriminated against his race through statements such as "that behavior may be okay in your country, but that's not how it's done in America," or that she told Plaintiff's colleagues he was a "dumb Arab" who "would not be around for long." For his religious discrimination claim, Plaintiff points to a single incident where Shropshire allegedly told him while walking through a Christmas buffet line "don't worry, this does not have pork." On November 18, 2016, Defendant moved for summary judgment. On December 16, 2016, this Court heard oral argument on the motion, and the matter is now ripe for disposition.

4

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

First, Defendant is entitled to summary judgment on Count I for discrimination under § 1981 of the Civil Rights Act of 1866. The exclusive remedy for a violation of rights secured in § 1981 is a suit under 42 U.S.C. § 1983. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); Dennis v. Cty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995). A suit brought under § 1983 must be against a person. Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989). Here, Defendant is a State actor that does not qualify as a "person" for the purposes of a suit brought under § 1983. Plaintiff has not attempted to bring a claim under § 1983, nor could he. Thus, Plaintiff cannot maintain his first count for a violation of § 1981 of the Civil Rights Act of 1866.

Second, Defendant is entitled to summary judgment on Counts II and III because Plaintiff has not produced evidence of racial discrimination or retaliation in violation of Title VII. A plaintiff can prove discrimination through direct evidence or under the *McDonnell Douglas* burden-shifting framework. Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996). There are three phases in the *McDonnell Douglas* framework: (1) plaintiff must establish a prima facie case; (2) after plaintiff presents a prima facie case, then defendant must show a legitimate, non-discriminatory reason for the adverse employment action; and (3) then the burden shifts to plaintiff to prove the reason given by defendant is pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

Plaintiff has failed to provide direct evidence of racial discrimination or retaliation. A derogatory remark may be direct evidence of discrimination, but there must be a close temporal connection between the remark and the adverse employment action. See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir. 1994). An occasional or sporadic use of a racial or ethnic slur by itself is not an act of racial discrimination. Robinson v. Montgomery Ward & Co., 823 F.2d 793, 797 (4th Cir. 1987).

To support his argument of direct discrimination, Plaintiff relies on Daniel Harrison's deposition testimony, but Harrison's deposition does not clearly support Plaintiff's argument. In

6

fact, in his deposition, Harrison testified that he "didn't hear [Shropshire] make a racist comment." He stated that Shropshire "would refer to the middle east [sic]" when she made the comment about "stupid." From this, Plaintiff argues that Shropshire said that Plaintiff was a "dumb Arab." This is not direct evidence of racial discrimination, especially when the comments allegedly made by Shropshire were only occasional and sporadic. Likewise, the statement that "this is not how it's done here in America" is also not evidence of direct discrimination. Thus, Plaintiff has failed to present direct evidence of racial discrimination.

Plaintiff has also failed to present a prima facie case of racial discrimination under the *McDonnell Douglas* framework. To present a prima facie case, a plaintiff must prove that: (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class received more favorable treatment. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). A plaintiff's self-serving statements without any corroborating evidence are not sufficient to establish a prima facie case of discrimination. See Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004).

Here, Plaintiff cannot prove that his job performance was satisfactory or that a similarly situated employee outside the protected class was treated more favorably. While Plaintiff

7

claims that his work was satisfactory because his projects were completed on time and on budget, Plaintiff's self-serving view of his work ethic is insufficient to establish that his job performance was objectively satisfactory. In contrast, Defendant has presented a well-documented record for how Plaintiff failed to perform satisfactorily. On several evaluations, Plaintiff was marked as "below contributor." Even on the evaluations marking Plaintiff as a "contributor," the reviewer still noted several deficiencies in Plaintiff's performance. Furthermore, Plaintiff received several memos indicating that his job performance fell beneath expectations. Notably, the supervisors to conclude that Plaintiff's performance was unsatisfactory included an African American man, a Caucasian woman, and a Caucasian man. Thus, a diverse group of Defendant's supervisory employees all arrived at the same conclusion: Plaintiff's performance failed to meet Defendant's legitimate performance expectations.

Additionally, Plaintiff also cannot show that a similarly situated employee outside the protected class was treated more favorably. While a plaintiff does not need to be identical to a comparator-employee, there must be substantial similarity. See Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010). There should be similarity in all relevant aspects such as conduct, performance, and qualifications. Id. In this case, Plaintiff was unlike any other employee in the Fredericksburg District. He is

the only Senior Project Manager that is also a licensed engineer and had supervisory responsibilities. He also managed larger projects than other project managers in his district. While none of his colleagues were substantially similar, Plaintiff's most similar comparator would be Northridge. Yet, Defendant did not treat Northridge more favorably. Both failed to meet Defendant's performance expectations. Both received negative job performance reviews. Both lost their jobs with Defendant. Plaintiff lost his job when he was terminated while Northridge resigned before he could be terminated. Thus, Plaintiff cannot satisfy all the elements for a prima facie case of racial discrimination.

Likewise, Plaintiff cannot prove that Defendant retaliated against him for engaging in protected activity. To establish a prima facie case of retaliation, the plaintiff must prove that: (1) he engaged in protected activity, (2) an adverse action was taken against him, and (3) there was a causal link between the two events. E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005). The definition of protected activity is opposing discriminatory practices. Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). A complaint, whether formal or informal, must put the employer on notice that the employee is opposing discriminatory conduct. See id.

Here, Plaintiff did not engage in protected activity, nor can he show a causal connection between any alleged protected

activity and his subsequent termination. Aside from a single allegation of discrimination without any details, Plaintiff did not complain of discrimination until after he was terminated. The one claim of discrimination occurred when Plaintiff grieved his "below contributor" performance review from October 2013. His grievance did not mention any specific comments or actions from Shropshire or others. Defendant investigated the claim and concluded that it was meritless because there was insufficient evidence as Plaintiff could not identify a single allegation relating to a protected characteristic under Title VII.

Additionally, Plaintiff cannot prove a causal connection between his performance review grievance and his termination. A plaintiff must show that his protected activity was the but-for cause of the adverse action taken against him. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013). Yet, at the time of his grievance, Plaintiff was already on notice that his risked termination if his performance did not improve. Also, the events are not closely connected in temporal proximity since the grievance occurred several months before the adverse action. Thus, Plaintiff cannot prove Count II (racial discrimination) or Count III (retaliation).

Third, Defendant is entitled to summary judgment on Count IV because Plaintiff has not produced sufficient evidence of religious discrimination in violation of Title VII. There are

two theories for religious discrimination: disparate treatment and failure to accommodate. Plaintiff never sought a religious accommodation, so he can only prove his claim based on disparate treatment. To win on a disparate treatment theory, a plaintiff must prove that he was treated differently than other employees because of his religious beliefs. Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996). A plaintiff must also prove that his job performance was satisfactory and provide direct or indirect evidence that supports a reasonable inference that his discharge was discriminatory. Id. If direct evidence is unavailable, a plaintiff can prove his case under the *McDonnell Douglas* burden-shifting framework. Id.

Here, for the reasons given above, Plaintiff cannot prove that his job performance was satisfactory. He received numerous poor reviews and memos advising him to improve his performance. Further, Plaintiff cannot present direct or indirect evidence of religious discrimination. Plaintiff admits that his entire claim is based on a single comment from Christmas 2012 when Shropshire allegedly said, "don't worry, this does not have pork," as she walked through a buffet line with Plaintiff. This comment alone is insufficient to infer that Plaintiff's subsequent discharge was a result of religious discrimination. Plaintiff also cannot proceed on this claim because he failed to raise this argument to the EEOC. Accordingly, Plaintiff cannot prove Count IV.

11

Finally, even if Plaintiff could present a prima facie case of discrimination on any count, Defendant has a legitimate and non-discriminatory reason for terminating Plaintiff: inadequate job performance. Glover v. S.C. Law Enf't Div., 170 F.3d 411, 414 (4th Cir. 1999) ("Employers retain, as they always have, the right to discipline or terminate employees for any legitimate, nondiscriminatory reason."). Before discharging him, Defendant provided Plaintiff with both written warnings and specialized training. The training, Project Management School, was uniquely designed for Plaintiff. Yet, despite receiving multiple warnings and additional training, Plaintiff still struggled to adequately perform his core duties. Thus, Defendant had a legitimate reason for terminating Plaintiff, and there is insufficient evidence to prove that the stated reason was pretextual.

For the foregoing reasons, Defendant's Motion for Summary Judgment on all counts should be GRANTED. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
January 12, 2017